UNITED FOOD AND COMMERCIAL WORKERS HEALTH AND WELFARE FUND OF NORTHEASTERN PENNSYLVANIA, et al.

v.

DARWIN LYNCH ADMINISTRATORS, INC., et al.

Civ. No. 91–0252.

United States District Court, M.D. Pennsylvania.

Sept. 16, 1991.

---

Allan M. Kluger, Wilkes–Barre, Pa., Barry S. Slevin, Lena S. Zezulin, Slevin & Hart, Washington, D.C., for plaintiffs.

Richard M. Ferguson, Koff, Wendolowski, Ferguson & Mangon, P.C., Wilkes–Barre, Pa., for defendants.

### MEMORANDUM

NEALON, District Judge.

On February 15, 1991, the plaintiffs, United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania (Fund) and its Trustees, Ronald T. Brooks, Mary Ann Dalkiewicz, Thomas Lazur, Maryellen Francke, E.J. Fox, and Paul Chiz, Jr., filed a complaint alleging that the defendants, Darwin Lynch Administrators, Inc. (DLA) and Darwin Lynch (Lynch), personally and in his capacity as an administrator and fiduciary, breached their fiduciary duties under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* The defendants filed an answer and counterclaims against the plaintiffs on March 26, 1991.[1]

On April 4, 1991, the defendants filed a motion to disqualify the plaintiffs' counsel, Barry Slevin (Slevin) and Slevin & Hart, P.C. The defendants contend that Slevin participated "in the transactions and occurences [*sic*] which give rise to the [p]laintiffs' claim and the [d]efendants' defenses thereto, and are necessary witnesses in this action."[2] After extensions of time, the defendants submitted their supporting brief on May 2, 1991, and the plaintiffs filed their opposition brief on June 17, 1991. The defendants filed a reply on July 1, 1991. In addition, supplemental briefs were filed by the plaintiffs on July 8, 1991 and the defendants on July 9, 1991.

### I. *Background*[3]

The Fund is a joint labor and management health and welfare fund established pursuant to § 302(c) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c). DLA is a corporation that is in the business of providing administrative, consulting and related services to health and welfare pension plans. Lynch is the President and majority shareholder of DLA. The plaintiffs state that DLA was named the administrative manager of the Fund on January 1, 1988 in accordance with a contract. In fulfilling its obligations under the contract, DLA was bound by the Plan Documents of the Fund.

Eva Holland (Holland) was entitled to health and welfare benefits from the Fund. On November 17, 1989, Holland suffered a

---

1. By Order dated April 18, 1991, the court granted the plaintiffs an extension of time within which to file a responsive pleading to the defendants' counterclaims and stayed discovery proceedings pending the disposition of the defendants' motion to disqualify the plaintiffs' counsel. *See* Document 12 of record.

2. *See* Document 8 at ¶ 9 of record.

3. The court limits its recitation of the facts to those relevant to the present motion. Thus, the court will not recount the factual background with respect to the plaintiffs' claims arising out of benefits paid to employees of Video Concepts and the defendants' failure to obtain general errors and omissions insurance coverage.

stroke. She was admitted to Mary Imogene Bassett Hospital and subsequently transferred to New Medico Rehabilitation and Skilled Nursing Center (New Medico) on December 12, 1989. The plaintiffs allege that because New Medico is not a hospital, payment for services provided by New Medico is not covered by the Fund. Nevertheless, coverage for New Medico's services to Holland may be provided in order to reduce the Fund's costs for acute care at a hospital. The express approval of the Trustees, however, is required.

The plaintiffs aver that DLA's employees advised New Medico that their services to Holland would be covered by the Fund without obtaining the prior approval of the Trustees. On May 24, 1990, DLA paid $8,694.00 from the Fund to New Medico.[4] Hence, the plaintiffs assert that the defendants breached their contractual and fiduciary duties in their handling of Holland's benefits claim.[5]

## II. *Discussion*

The defendants contend that the plaintiffs' counsel should be disqualified because Slevin, an attorney with Slevin & Hart, P.C., is a necessary witness in the action. Further, the defendants assert that Slevin has an interest adverse to the plaintiffs and that he represented the defendants in a prior civil suit arising from a claim for benefits.

4. DLA's contract with the Fund expired on May 31, 1990. American Administrators, Inc. became the subsequent administrative manager of the Fund.

5. DLA was replaced as the administrative manager of the Fund prior to Holland's discharge from New Medico. The total cost for the services rendered to Holland was $312,279.00, which included the $8,694.00 paid by DLA on behalf of the Fund. The Fund negotiated a settlement agreement with New Medico. New Medico received $160,000.00 in full settlement of its services provided to Holland.

6. The Rules of Professional Conduct were adopted by the Supreme Court of Pennsylvania on October 16, 1987 and became effective on April 1, 1988. The Rules of Professional Conduct supersede the Code of Professional Responsibility. The Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, with the exception of Rule 3.10, are applicable

### A. Standing

■ The plaintiffs argue that the Rules of Professional Conduct[6] do not give the defendants "any standing to bring this motion."[7] The court concludes, however, that the disqualification motion is properly before the court. "One of the inherent powers of any federal court is the admission and discipline of attorneys practicing before it." *In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 160 (3d Cir.1984). In determining whether disqualification is appropriate, the court looks to the standards and principles promulgated by the American Bar Association in the Rules of Professional Conduct for guidance. *See id.* at 160–61.[8]

### B. Lawyer as Witness

Rule 3.7 prohibits a lawyer from acting "as advocate at a trial in which the lawyer is *likely to be a necessary witness....*"[9] (Emphasis added). In contrast to the superseded provisions of the Code of Professional Responsibility, Rule 3.7 sets forth a restrictive criterion for disqualification.[10] "This standard requires the opposing party to bear a higher burden on a disqualification motion, permits the court to delay ruling until it can determine whether another witness can testify, and precludes disqualification if the lawyer's testimony would

in this court. *See* United States District Court for the Middle District of Pennsylvania Rule of Court 304.2.

7. *See* Document 22 at 4 of record.

8. The court does not construe the plaintiffs' argument to challenge the defendants' standing to raise Slevin's alleged conflict of interest. The court notes that the motion to disqualify was made by a former client of Slevin. *In re Corn Derivatives,* 748 F.2d at 161.

9. The exceptions to Rule 3.7 are omitted as the parties do not maintain that an exception applies.

10. DR 5–101 of the Code of Professional Responsibility provided in pertinent part that a "lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm *ought to be called as a witness....*" (Emphasis added).

merely be cumulative." *Cannon Airways, Inc. v. Franklin Holdings Corp.*, 669 F.Supp. 96, 100 (D.Del 1987) (citations omitted).

The defendants aver that DLA entered into an administrative agreement (1985 Agreement) with the Fund on July 6, 1985. The 1985 Agreement was to terminate on June 1, 1990. The defendants state that it is the plaintiffs' contention that the 1985 Agreement was superseded by a subsequent agreement (1988 Agreement) effective on January 1, 1988 and that the plaintiffs' breach of contract claim arises from the 1988 Agreement. While the defendants dispute the effective date of the 1988 Agreement, they maintain that, even if applicable, their actions do not constitute a breach of the latter Agreement.

▇ In seeking disqualification, the defendants argue that Slevin is a necessary witness because evidence, which can be obtained only from Slevin, concerning the construction and interpretation of the Plan Document, 1985 Agreement and 1988 Agreement are at the crux of this dispute. Specifically, they seek Slevin's testimony with respect to the effective date and operation of the 1988 Agreement. The plaintiffs respond that the defendants have not demonstrated that Slevin is "likely to be a necessary witness." After a review of the record, the court concludes that the defendants' have not satisfactorily established, at this time, that Slevin "is likely to be a necessary witness."

The parol evidence rule provides that "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of

antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." 3 CORBIN ON CONTRACTS § 573 at 357 (1960) (footnote omitted). Extrinsic evidence, however, is admissible to ascertain whether a contract has been made, whether the contract is void or voidable, and whether the parties have assented to a writing as the complete and accurate "integration" of that contract. *Id.* at 358–60. In addition, parol evidence is admissible to interpret a writing. *Id.* at § 579 at 412–13.[11] Hence, testimony by Slevin, with respect to these issues, may be admissible. Nevertheless, the defendants have not shown that no other witness could testify to these issues.

By affidavit, Lynch states that prior to December 1989 the past practice and policy of the Fund allowed the payment of benefits for participants who were transferred to a rehabilitation facility within seventy-two hours of discharge from a hospital. *See* Document 14, Affidavit of Darwin Lynch at ¶ 7, of record. Lynch avers that Slevin is the "only other person who has first hand knowledge concerning the meaning" of the subsequently revised Plan Document.[12] Further, Lynch asserts that all discussions and negotiations regarding the 1988 Agreement were conducted by Slevin and himself.[13] Lynch continues that, even if the 1988 Agreement did become effective, it was his understanding that the 1988 Agreement would not modify what was previously considered by the Trustees to be a covered benefit.[14]

Although Slevin may be qualified to testify with respect to these issues, the defendants would not be deprived of an opportunity to prove their case if Slevin's testimo-

---

**11.** *See also Sunbury Textile Mills, Inc. v. C.I.R.,* 585 F.2d 1190, 1195, n. 6 (3d Cir.1978).

It is true that the language of some agreements has been believed to be so plain and clear that the court needs no assistance in interpreting. Even in these cases, however, it will be found that the court has had the aid of parol evidence of the surrounding circumstances. The meaning to be discovered and applied is that which each party had reason to know would be given to the words by the

other party. Antecedent and surrounding factors that throw light upon this question may be proved by any kind of relevant evidence.

*Id.*

**12.** *Id.* at ¶ 13.

**13.** *Id.* at ¶ 14.

**14.** *Id.*

ny is excluded.[15] Obviously, Lynch may testify on the defendants' behalf. The defendants may show that the past policy of the Fund authorized the handling of the Holland claim by identifying claims that had been paid in similar circumstances. Finally, testimony may be obtained from the Trustees in an effort to corroborate the defendants' contentions.

## C. Conflict of Interest

■ The defendants cite Rule 1.7 and Rule 1.9 of the Rules of Professional Conduct to establish that Slevin must be disqualified. Rule 1.7 and Rule 1.9 address conflict of interest. Rule 1.7 provides that a "lawyer shall not represent a client if the representation of that client may be materially limited … by the lawyer's own interests.…" The Comment to Rule 1.7 states that "[i]f the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice."

The defendants contend that the integrity of Slevin's conduct is "in serious question"[16] because he may be "held at least partially responsible to the Fund for the poor drafting" of the documents at issue[17] and "may have been negligent in the way he represented the Fund" at a meeting of the Board of Trustees.[18] Although the defendants' argument has a certain superficial plausibility, the court must reject this contention. The court does not interpret the language of Rule 1.7 to require disqual-

ification of Slevin merely because he drafted the documents or advised the Fund with respect to the subject matter of the litigation.[19] Rather, Rule 1.7 is intended to ensure a lawyer's loyalty to his client. The defendants have failed to show at this point that Slevin's loyalty to the Fund is questionable.

■ Rule 1.9 provides that:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

By affidavit, Lynch states that Slevin has represented him, DLA and the Fund in an action for benefits initiated by Hanover Brands, Inc. (Hanover). Lynch declares that "[a]lthough the suit did not concern rehabilitative care, the action did involve a claim made under the same Plan document and [Summary Plan Description] involved in the instant case."[20] Further, "[a]s his client, [Lynch] shared various confidences with … Slevin on behalf of [himself] and DLA concerning, *inter alia*, the Plan Doc-

---

15. In fact, it is the plaintiffs who will be required to establish their case with evidence other than the testimony of Slevin. Thus, although Lynch may dispute, by affidavit, the effective date of the 1988 Agreement, the plaintiffs, as part of their case in chief, may offer the contract and the testimony of Suzanne Michel (Michel). On the face of the contract, the effective date is stated as January 1, 1988. By affidavit, Michel states that Lynch compensated DLA from the Fund assets in accordance with the rate set in the 1988 Agreement effective January 1, 1988.

16. *See* Document 13 at 12 of record.

17. *Id.*

18. *Id.* at 13.

19. The Comment to Rule 1.7 states that "[r]esolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility.… Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment." The court concludes that the alleged conflict is not such "as clearly to call in question the fair or efficient administration of justice[.]"

20. *See* Document 14 at 10 of record.

ument and the [Summary Plan Description] (including the interpretation thereof), claims handling, claims entitlement and fund administration."[21]

The defendants argue that the pending suit is a "substantially related matter" to the action brought by Hanover against the plaintiffs and the defendants. The court is not persuaded that the Hanover litigation and the instant suit are "substantially related". An examination of Hanover's complaint reveals that the primary issue was the termination of a participant's coverage.[22] While the defendants are technically accurate in maintaining that Hanover's "claim did focus on the same Plan Document and [Summary Plan Description] which governed the [Holland] [c]laim[,]"[23] the present suit appears to raise different issues. Further, it is "generally accepted ... that when 'the same attorney acts for two or more parties having a common interest, neither party may exercise the [lawyer-client] privilege in a subsequent controversy with the other.'" 2 WEINSTEIN & BERGER, WEINSTEIN'S EVIDENCE ¶ 503(d)(5)[01] at 503–129 (1989). Although Lynch states that, with respect to the Hanover action, he "shared various confidences" with Slevin,[24] the court cannot determine from this bald assertion whether Lynch may be exempted from the general rule.

### III. *Conclusion*

For the foregoing reasons, the defendants' motion to disqualify the plaintiffs' counsel Slevin and Slevin & Hart, P.C. will be denied. If further proceedings indicate that Slevin should be disqualified, the defendants may submit another motion. The plaintiffs will be granted twenty days from the date of this Memorandum and Order to file a response to the defendants' counterclaims. Further, the plaintiffs and the defendants will be granted twenty days to file supplemental briefs with respect to the discovery proceedings.

---

**21.** *Id.*

**22.** *See* Document 28 at Exhibit E of record.

**23.** *See* Document 13 at 15 of record.

**24.** *See* Document 14, Affidavit of Darwin Lynch, at 10 of record.