# Kehrer v. Nationwide Insurance Company

*Joseph F. Roda,* for plaintiffs.
*Richard B. Wickersham,* for defendant.

FARINA, *J.,* August 9, 1994—Before the court is defendant Nationwide Insurance Company's motion to disqualify plaintiffs' counsel. The underlying bad faith and fraud action was filed on January 19, 1993 for the alleged failure of defendant to investigate, pay, or settle plaintiffs' underinsured motorist claim in good faith. Preliminary objections in the nature of demurrers were previously denied.[1] Both parties also filed motions for summary judgment which this court denied as issues of material fact were still unresolved. Defendant now requests the court to disqualify plaintiffs' counsel, Joseph F. Roda, due to his "inevitable role as a trial witness."

The motion to disqualify is based on Rule 3.7 of the Pennsylvania Rules of Professional Conduct,[2] which states:

---

1. See *Kehrer v. Nationwide Insurance Co.,* 73 Lanc. L. Rev. 586 (1993).

2. We note that while violations of the rules of professional responsibility are normally not the proper subject for consideration

"(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

"(1) the testimony relates to an uncontested issue;

"(2) the testimony relates to the nature and value of legal services rendered in the case; or

"(3) disqualification of the lawyer would work substantial hardship on the client.

"(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9."

Defendant maintains it in all "likelihood" will call Roda as a trial witness to testify to a myriad of factual disputes relating to the most contested issue—whether its handling of the claim was done in bad faith. Defendant also claims the testimony of Mr. Roda is essential to plaintiffs' ability to establish bad faith.

Noting there is little case law addressing the applicability and effect of Rule 3.7, defendant cites cases relying on prior ethical provisions defendant claims are "essentially parallel to Rule 3.7." See D.R. 5-101(B) and D.R. 5-102(A). Defendant relies upon two Pennsylvania Federal Court unpublished memorandum opinions which granted motions to disqualify, as well as cases from other jurisdictions. For example, in *Fassett v. Liberty Mutual Insurance Co.,* no. 87-278, slip op. (E.D. Pa. 1987), defendant moved to disqualify plain-

---

of any tribunal other than those authorized by the Pennsylvania Supreme Court, *Ludmer v. Nernberg,* 433 Pa. Super. 316, 640 A.2d 939 (1994), it is appropriate for trial courts to enforce the rules by disqualifying counsel where disqualification is needed to protect the rights of litigants to a fair trial. *In re Estate of Pedrick,* 505 Pa. 530, 482 A.2d 215 (1984).

tiff's counsel based upon his involvement in the underlying settlement negotiations and trial. In disqualifying counsel based on D.R. 5-102(A), the court stated that "it is extremely unlikely that [plaintiff] will be able to meet her heavy burden of proof without the testimony of her attorney in that litigation." See also, *Kalmanovitz v. G. Heilman Brewing Co.,* 610 F. Supp. 1319 (D.Del. 1985); *MacArthur v. Bank of New York,* 524 F. Supp. 1205 (S.D. N.Y. 1981); *Supreme Beef Processors Inc. v. American Consumer Industries Inc.,* 441 F. Supp. 1064 (N.D. Tex. 1977).

The Rules of Professional Conduct were adopted by the Supreme Court of Pennsylvania on October 16, 1987 and became effective on April 1, 1988, superseding the Code of Professional Responsibility. D.R. 5-101(B) of the Code provided:

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm *ought to be called as a witness,* except that he may undertake employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"(4) As to any matter, if refusal would work substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." (emphasis added)

D.R. 5-102(A) provided:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in D.R. 5-101(B)(1) through (4)."

We disagree with defendant's assertion that the prior ethical provisions are "essentially parallel" to current Rule 3.7, and therefore find any reliance upon cases granting disqualification issued pursuant to the language of the prior provisions have little precedential value. Courts and legal commentators have both recognized Rule 3.7 represents a change in the standard for attorney disqualification, thereby placing a higher burden on the party seeking disqualification than did the Model Code standard. Stonerock, *The Advocate-Witness Rule: Anachronism or Necessary Restraint?*, 94 Dick. L. Rev. 821, 846 (Summer 1990); *United Food and Commercial Workers v. Darwin Lynch,* 781 F. Supp. 1067, 1069 (M.D. Pa. 1991).

Under the prior ethical provisions, courts were required to determine not whether an attorney will testify, but whether he "ought to testify." The fact a lawyer and his client independently decided the lawyer need not testify was not controlling. See *Kalmanovitz,* 610 F. Supp. at 1325. Courts interpreted the "ought to testify" language broadly finding it was irrelevant whether the information known to the attorney was merely corroborative; the client was entitled to every scrap of favorable evidence available. *Id.*

An important criticism of the code formulation is that it was susceptible to use as a tactical measure to disrupt an opposing party's preparation for trial and divest opposing parties of their counsel of choice. *Cannon Airways v. Franklin Holding Corp.,* 669 F. Supp. 96 (D.Del. 1987). Present Rule 3.7 minimizes this potential for abuse of disqualification motions as tactical weapons by placing a higher burden on the party moving for disqualification.

In order to succeed in a motion to disqualify counsel under Rule 3.7, the moving party must demonstrate that opposing counsel is "likely to be a necessary witness." In addition, the testimony must relate to a contested issue, since Rule 3.7(a)(1) permits an attorney to act as both advocate and witness where the testimony relates to an uncontested issue. The rule also provides two other exceptions which allow counsel to exercise the roles of both advocate and witness, the most significant of which would preclude disqualification where it would work substantial hardship on the client. However, the threshold issue is whether counsel is "likely to be a necessary witness." The American Bar Association and courts agree the term "necessary" means no other witness could testify, and precludes disqualification if the lawyer's testimony would merely be cumulative. See *United Food,* 781 F. Supp. at 1069-70; *Law Manual on Professional Conduct* (ABA/BNA) 61:507 (April 14, 1984). To hold otherwise "would be to ignore the obvious meaning of 'necessary' " and would "invite abuse in an area where broad exceptions can wreak havoc with fundamental rights." *Cluck v. Jesus Is Lord Ministries,* 15 D.&C.4th 401, 406 (Adams Co. 1992).

Defendant argues Mr. Roda, as agent and negotiator for plaintiffs, is a critical witness with information nec-

essary to both plaintiffs' claim and the defense. Mr. Roda must therefore be disqualified from representing plaintiffs at trial in order to avoid the appearance of impropriety and prejudice to defendant, as well as to protect the interests of his clients. We view the argument of defendant twofold. First, defendant argues there is no doubt with respect to the crucial nature of the testimony Mr. Roda "ought" to give. He is a key figure in establishing plaintiffs' claim, as he authored all correspondence to defendant relating to the offers to settle within the policy limits, and was the exclusive representative of the plaintiffs in dealing with defendant during the UIM case. Defendant maintains it is extremely unlikely plaintiffs will be able to meet their heavy burden of proof without the testimony of Mr. Roda. Second, defendant argues it will in all "likelihood" call Mr. Roda to testify during its case in chief.

At the outset, we note plaintiffs have no intention of calling Mr. Roda to testify on their behalf. Plaintiffs argue no reason exists for defense counsel to override the decision of plaintiffs' counsel on how to prove plaintiffs' case, particularly since counsel has no crucial information in his possession which must be divulged, and plaintiffs can develop all the evidence of bad faith they need through the testimony of the agents and employees of defendant, and through the contents of the records of defendant. We agree.

Defendant's first argument asserts Mr. Roda is a critical witness for establishing the bad faith claim, and therefore must be disqualified. However, we are wary of the motives of the adversary who seeks to become the protector of the rights of the client—"just as one might suspect a wolf who seeks to guard the chicken coop." Wydick, *Trial Counsel as Witness: The Code and the Model Rules,* 15 U.C. Davis L. Rev. 651, 678

(1982), quoted in Stonerock, *The Advocate-Witness Rule, supra* at 844. The presentation of the motion in this fashion suggests it is being offered for tactical reasons—to remove Mr. Roda from the proceedings. Logically, if Mr. Roda was in fact the critical witness on whose testimony plaintiffs' case hinged, and elected not to become a witness, defendant would not be making this motion because a verdict in its favor would be forthcoming. We are therefore cautious when defendant seeks to protect the interest of plaintiffs under the guise of altruism or the protection of the reputation of the legal system as a whole.

The fact remains the more stringent standard imposed by Rule 3.7 does not obligate Mr. Roda to recuse himself or necessitate disqualification where his potential testimony would merely be cumulative. Plaintiffs assert bad faith will be demonstrated at trial through the testimony and records of defendant and its employees; any potential testimony by Mr. Roda would be cumulative in nature. Defendant has not demonstrated otherwise. To require plaintiffs to offer Mr. Roda as a witness under such circumstances would ignore the meaning of "necessary" and displace the plaintiffs and their counsel's judgment on how best to present their case.[3]

---

3. We note the only case cited by defendant applying Rule 3.7 deferred ruling on the disqualification motion because it did not appear plaintiff's counsel would be a necessary witness. The court refused to grant the motion based on speculation counsel might have to testify, finding "it is neither for defense counsel nor this court to displace the plaintiff and her counsel's judgment of how best to present her case.... I defer to the client's right to counsel of her choice and to their joint role as trial strategists." *Anderson v. Reliance Life Insurance Co.,* slip op., 1988 U.S. Dist. Lexis 7914 (E.D. Pa. 1988).

Defendant also argues Mr. Roda should be disqualified because it in all "likelihood" will call him to testify during its case in chief. That fact alone does not entitle defendant to have opposing counsel disqualified. To hold otherwise would encourage abuse of the advocate-witness rule for tactical reasons. If disqualification motions were routinely granted in such situations, the temptation to remove opposing counsel from the litigation would be great. Disqualifying opposing counsel can improve the position of a party in litigation because the new attorney may not be as good as the original attorney, and the additional cost and delay associated with the motion may force a favorable settlement or even withdrawal of the action. Stonerock, *The Advocate-Witness Rule, supra* at 882.

The advocate-witness rule normally arises when a party is called to testify for his client. The rule serves to protect the interests of the parties since "combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client." Rules of Professional Conduct Rule 3.7 cmt. (1994). A number of courts have recognized the potential for abuse of the rule when a lawyer is called as a witness other than on behalf of his client. The Supreme Court of Appeals of West Virginia considered the issue on review of a first party bad faith settlement practices suit in *Smithson v. United States Fidelity & Guaranty Co.,* 411 S.E.2d 850 (W.Va. 1991). Following the reasoning of the Arizona Supreme Court, the court held that:

"When an attorney is sought to be disqualified from representing his client because an opposing party desires to call the attorney as a witness, the motion for disqualification should not be granted unless the following factors can be met: First, it must be shown that the

attorney will give evidence material to the determination of the issues being litigated; second, the evidence cannot be obtained elsewhere; and third, the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client." *Smithson,* 411 S.E.2d at 856; *Cottonwood Estates Inc. v. Paradise Builders Inc.,* 624 P.2d 296, 302 (Ariz. 1981).

The test set forth in *Smithson* weeds out spurious motions by placing a heavy burden on the movant to demonstrate the necessity of the testimony of opposing counsel when he is called to testify on behalf of a party other than his own client. While the motion to disqualify in *Smithson* was based on prior ethical provision D.R. 5-102(B), we find the three part test applicable to current Rule 3.7. The first part of the test is analogous to the Rule 3.7 prerequisite for disqualification that testimony relate to a contested matter. The second part of the test, requiring that the evidence cannot be obtained elsewhere, distances itself from the interpretations, noted above, of the language "ought to testify" found in decisions applying the code. This resulting requirement is the same as the definition provided by courts and the ABA of the term "necessary" under Rule 3.7. See *e.g. United Food,* 781 F. Supp. at 1069-70 ("necessary" means no other witness could testify and precludes disqualification if the testimony would merely be cumulative). The third part of the test requires the testimony of the lawyer to be prejudicial to his own client. The comment to Rule 3.7 provides some guidance:

"Whether the combination of roles involves an improper conflict of interest with respect to the client is determined by Rule 1.7 or 1.9. For example, if there is likely to be a substantial conflict between the testimony of the client and that of the lawyer or a member

of the lawyer's firm, the representation is improper. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party. Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved."

We find implicit in the language and meaning of Rule 3.7 the requirement that a party calling opposing counsel as a witness must demonstrate the proposed testimony will be prejudicial to the testifying attorney's client. Obviously, if the testimony of counsel will conflict with the testimony of his client, the client's case will be adversely affected, and the attorney should withdraw or be disqualified. However, there is no basis for disqualifying counsel where the testimony offered on behalf of the opposing party benefits or has no effect on the client. Disqualification would only serve as an unwarranted penalty under such circumstances.

There is no question Mr. Roda was involved in the communications between the parties relating to the bad faith claim, and could be a witness in this case. However, that fact alone is not sufficient to justify disqualification. Defendant must demonstrate Mr. Roda is a "necessary" witness—one who will provide evidence on the contested issue of bad faith that is not available from any other witness and is prejudicial to the plaintiffs. Our review of the record reveals the information and areas Mr. Roda would potentially testify to all involve conversations and documents which can and will be addressed by other witnesses. More importantly, defendant has not presented any evidence from Mr. Roda's deposition or otherwise suggesting his testimony would prejudice the plaintiffs or even further the interests of the defense. Applying the *Smithson* test, which we find implicit in Rule 3.7, to the facts of this case, we find

Mr. Roda is not a necessary witness for the defense, and therefore deny the motion for disqualification.

Our holding makes it unnecessary to consider defendant's related motion to disqualify the firm of Joseph F. Roda, P.C.[4]

Accordingly, we enter the following:

## ORDER

And now, August 9, 1994 upon consideration of defendant's motion to disqualify plaintiffs' counsel, and the briefs of the parties with regard thereto, the motion is denied. However, this ruling is without prejudice to defendant to file a second motion if and only if plaintiffs at some future date advise the court and defendant of their intention to call Mr. Roda as a witness on their behalf.

---

4. However, we note that even if we disqualified Mr. Roda, his firm could continue to represent plaintiffs under Rule 3.7(b) unless precluded from doing so by Rule 1.7 or Rule 1.9.