**Donald A. BRENNAN and Bernadette J. Brennan, Individually and as h/w, Plaintiffs,**

**v.**

**INDEPENDENCE BLUE CROSS and Pennsylvania Blue Shield, Defendants.**

Civil Action No. 95–8045.

United States District Court, E.D. Pennsylvania.

Dec. 11, 1996.

---

## MEMORANDUM

ROBERT F. KELLY, District Judge.

Before this Court is Defendants' Motion to Disqualify Daniel L. Thistle, Esquire ("Thistle"), as counsel for Plaintiffs in the above-captioned matter. Defendants, Independence Blue Cross and Pennsylvania Blue Shield, object to Thistle's representation of the Plaintiffs ("the Brennans") based upon allegations that Thistle's previous representation of Defendants in a matter has resulted in an impermissible conflict of interest. Defendants also allege that Mr. Thistle should be disqualified because he will most likely be called as a necessary witness in this case.

For the following reasons, Defendants' motion will be granted.

## BACKGROUND

■ On May 17, 1994, Thistle, while employed by the law firm of Beasley, Casey, Colleran, Erbstein, Thistle and Kline, wrote to Defendants and advised them of his representation of the Brennans in a medical malpractice action and inquired whether Defendants intended to assert a subrogation claim in that action.[1] (Defendants' Motion, Ex. B). Defendants' subrogation right arose out of the Defendants' payment of medical benefits on behalf of Plaintiff Donald Brennan, a quadriplegic, who allegedly sustained his quadriplegia from the negligence of Thomas Jefferson University Hospital and physicians.

By letter, dated July 11, 1994, Defendants advised Thistle that they did intend to assert a subrogation right in that matter and inquired whether Thistle desired to represent Defendants in accordance with the terms proposed in said letter. (Defendants' Motion, Ex. D). On August 22, 1994, Thistle agreed to represent Defendants' subrogation right. Subsequently, Thistle obtained a fee for his representation of Defendants after the underlying medical malpractice case settled. (Defendants' Motion, Exs. E, F, & G). On June 28, 1995, Thistle sent Defendants a check for $46,151.50 as "full and final settlement" of their subrogation lien. (Defendants' Ex. J).

On November 24, 1995, the Brennans filed the Complaint in this matter, demanding payment for twelve hours of daily skilled nursing care that is alleged to be medically necessary because Donald Brennan is a quadriplegic. Defendants now object to Thistle's representation of Plaintiffs because his former representation of Defendants' subrogation rights has resulted in an impermissible conflict of interest in that the instant action involves a dispute between the parties over whether Defendants have any present contractual right to subrogation for payment of medical benefits on behalf of Donald Brennan that are related to his quadriplegia.

---

1. "The right to stand in the insured's shoes and to collect from the tortfeasor once it has paid the insured an amount representing the tortfeasor's debt is called the insurer's right to subrogation." *Daley–Sand v. West Am. Ins. Co.,* 387 Pa.Super. 630, 564 A.2d 965, 969–70 (1989).

On October 4, 1996, Defendants filed the instant motion. Plaintiffs responded to said motion on October 17, 1996. Oral argument took place on October 28, 1996.

### STANDARD

■ The Third Circuit has stated that a district court, in exercising its discretionary power,

> should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions.

*United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980). "The party seeking to disqualify opposing counsel bears the burden of clearly showing that continued representation would be impermissible." *Cohen v. Oasin*, 844 F.Supp. 1065, 1067 (E.D.Pa.1994) (citing *Commercial Credit Business Loans, Inc. v. Martin*, 590 F.Supp. 328, 335–36 (E.D.Pa.1984)). However, any doubts as to the existence of a violation of the rules should be resolved in favor of disqualification. *See International Business Mach. Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978).

### DISCUSSION

The United States District Court for the Eastern District of Pennsylvania recognizes the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania as the standards for professional conduct that attorneys appearing before this court must comply with. *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1203 (E.D.Pa.1992). Rule 1.9 of the Pennsylvania Rules of Professional Conduct states the following:

> A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation[.]

■ A threshold issue exists as to whether Thistle represented Defendants in an attorney/client relationship when he agreed to protect their subrogation lien in the underlying medical malpractice litigation. According to Plaintiffs, "it is self-evident that in agreeing to protect the subrogation interests of a[n] ... insurance carrier, the plaintiff's attorney is merely extending a courtesy to these entities ... and is not 'representing' them in the classic attorney-client relationship sense." (Plaintiffs' Opposition Memorandum at 3). Thus, Plaintiffs argue that Mr. Thistle has no conflict of interest in his present representation of the Brennans against Defendants because "Mr. Thistle's only clients throughout the underlying medical malpractice litigation and the instant litigation have been the Brennans." *Id.*

Plaintiffs are mistaken. It is clear from the correspondence in evidence between the insurance companies and Plaintiffs' counsel that Defendants retained Thistle to "represent" their subrogation right. (Defendants' Exs. E, F, & G). Moreover, Plaintiffs provide nothing to support their contention that Thistle's mere protection of Defendants' subrogation claim was not enough to establish Thistle as an attorney who represented Defendants. Thus, this Court concludes that Thistle's agreement to protect Defendant's subrogation lien did rise to the level of an attorney/client relationship and that such representation did qualify Independence Blue Cross and Pennsylvania Blue Shield as former clients.

■ While Pennsylvania courts have acknowledged that an attorney's representation of both an insured and an insurer's subrogation claim concerning the insured does not ordinarily result in a conflict of interest, *see Molitoris v. Woods*, 422 Pa.Super. 1, 618 A.2d 985, 990 (1992), the instant action is unusual. Here, Defendants argue that a conflict arose not when Thistle agreed to represent Defendants' subrogation right, but as a result of Thistle's representation of the Brennans against Defendants in the case at hand.

Thistle's present representation of the Brennans has occurred after settling the underlying medical malpractice action in which Thistle represented both the Brennans' tort claims and Defendants' subrogation right. The underlying medical malpractice action included a claim for future medical benefits that Mr. Brennan would need. Thus, a conflict does exist in that Thistle now represents the Brennans in their present claim against Defendants for the same medical benefits that were at stake in the underlying medical malpractice action in which Thistle represented both parties.

■ In their response to Defendants' motion, Plaintiffs have argued that any conflict of interest has been waived by Defendants. Plaintiffs point out that Defendants asked Mr. Thistle to represent their subrogation interest instead of retaining separate counsel in the underlying medical malpractice lawsuit. Thus, Plaintiffs submit that because Defendants were fully aware of a possible conflict of interest when they agreed to allow Mr. Thistle to protect their lien, Defendants waived any such conflict.

However, "[c]ertain rights are so basic to our judicial system that they cannot be easily waived." *International Longshoremen's Ass'n, Local Union 1332 v. International Longshoremen's Ass'n*, 909 F.Supp. 287, 292 (E.D.Pa.1995). A client's right to legal representation that is free of any conflicts of interest is no different.

> Attorneys must consult with their clients about potential conflicts of interest, and must disclose the facts and circumstances surrounding the conflicts to such an extent that the clients appreciate the significance of the conflict. An exchange of letters ... is simply not sufficient to waive a client's right to conflict-free representation.

*Id.* Thus, Rule 1.9(a) required Thistle to do more than rely on Defendants' alleged sophistication.[2] (N.T. 10/28/96 at 13, 23).

■ Plaintiffs further argue that, even if there is a conflict of interest, "there is no substantial relationship between Mr. This-

tle's prior representation of Blue Cross/Blue Shield. ... and the present litigation which would warrant his disqualification." (Plaintiffs' Opposition Memorandum at 7). Thus, Plaintiffs urge this Court to "focus upon whether confidences might have come out during the prior representation which would be relevant to the current action and not merely consider the relationship between the facts underlying the two representations." *INA Underwriters Ins. Co. v. Nalibotsky*, 594 F.Supp. 1199, 1206 n. 5 (E.D.Pa.1984).

■ To perform a "substantial relationship" analysis under Rule 1.9, a court must first examine the nature and scope of the prior representation at issue and the nature of the present lawsuit against the former client. *See Nalibotsky*, 594 F.Supp. at 1206. Here, Thistle previously agreed to represent Defendants' subrogation right in the Brennans' underlying medical malpractice action. The Brennans' settlement in that medical malpractice action included a claim for future medical benefits—the same medical benefits that are at issue in the instant case and the same medical benefits of which Thistle represented Defendants' subrogation right. Thus, the subject matter of each representation is, in effect, the same.

Next, a court must inquire: "In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" *Id.* In *Realco Servs., Inc. v. Holt*, 479 F.Supp. 867 (E.D.Pa. 1979), the court stated that a lawyer "might have acquired" substantially related information in issue if

> (a) the lawyer and the client ought to have talked about particular facts during the course of the representation, or (b) the information is of such character that it would not have been unusual for it to have been discussed between lawyer and client during their relationship.

*Id.* at 871–72.

While the only confidential information that Plaintiffs' counsel received from Inde-

---

2. Moreover, at the time Defendants engaged Thistle to represent their subrogation lien, they were not aware of any intention of Plaintiffs'

counsel to proceed against them in the matter at hand.

pendence Blue Cross and Pennsylvania Blue Shield concerned the scope and value of their subrogation rights, such information is directly relevant in the instant action, as is the present legality of Defendants' subrogation rights.[3] In this regard, the Comment to Rule 1.9 of the Pennsylvania Rules of Professional Conduct instructs the following:

> When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited.... The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

Accordingly, this Court concludes that, under Rule 1.9, Thistle cannot represent the Brennans in this case because it is essentially the same or a substantially related matter in which the Brennans' interests are materially adverse to the interests of the Defendants, Thistle's former clients.[4]

■ In addition, Defendants contend that Mr. Thistle should be disqualified because he will likely be called to testify as a necessary witness concerning Defendants' subrogation right.[5] Plaintiffs respond that the parol evidence rule precludes Mr. Thistle from testifying on behalf of the Plaintiffs in this matter.

The parol evidence rule provides that "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." 3 CORBIN ON CONTRACTS § 573 at 357 (1960) (footnote omitted). Extrinsic evidence, however, is admissible to ascertain whether a contract has been made, whether the contract is void or voidable, and whether the parties have assented to a writing as the complete and accurate "integration" of that contract. *Id.* at 358–60. In addition, parol evidence is admissible to interpret a writing. *Id.* at § 579 at 412–13.

*United Food & Commercial Workers v. Darwin Lynch Admrs., Inc.,* 781 F.Supp. 1067, 1070 (M.D.Pa.1991). Hence, testimony by Thistle, with respect to these issues may be admissible.[6]

However, Rule 3.7 of the Pennsylvania Rules of Professional Conduct prohibits a lawyer from representing a client at a trial in which the lawyer is likely to be a necessary witness. In the instant case, Plaintiffs have argued that Defendants' subrogation right has been waived.[7] In order to establish such

---

**3.** Previously, Thistle represented the Defendants by "protecting" their subrogation lien and, thus, was involved in negotiations on Defendants' behalf. Yet, "[w]hen Mr. Thistle sent the defendants a draft reimbursing their lien, less his fee and proportionate share of costs, he added language to the settlement draft in an attempt to discharge all future subrogation rights of the defendants." (Defendants' Memorandum at 3). In the instant action, Defendants have asserted this right of subrogation as their primary defense. Defendants now submit that if their subrogation rights have been extinguished by the release and they have no shoes to stand in to go back after the third party tort-feasors, then Defendants' contract obligations in the instant action are, likewise, extinguished. (N.T. 10/28/96 at 26–27).

**4.** It is worthy to note that "[t]he problem addressed in Rule 1.9(a) sometimes has been dealt with under the rubric of Canon 9 of the Code, which provides that 'A lawyer should avoid even the appearance of professional impropriety.'"

See Code Comparison to Rule 1.9 of Pennsylvania Rules of Professional Conduct.

**5.** At oral argument, Mr. Thistle admitted that he could testify on the issue of whether or not Defendants released their subrogation lien. (N.T. 10/28/96 at 24). Such testimony relates to a contested issue between the parties.

**6.** As it stands now, a central issue in this case is the Defendants' subrogation right. Clearly, Mr. Thistle's first-hand knowledge is at issue in this regard. If Mr. Thistle were permitted at act as both advocate and witness, it is likely that a jury would not be able to conceptually draw the distinction between his evidentiary testimony and his arguments analyzing the evidence.

**7.** Plaintiffs allege that Defendants waived any future subrogation rights that Defendants have by accepting the check for their lien amount, less fees and costs, as "full and final settlement of any and all claims/liens asserted or that could be asserted both past and future against Donald and

a waiver by Defendants, Mr. Thistle must testify on behalf of the Plaintiffs with regard to the contractual issues that surround the alleged waiver. In addition, it is extremely unlikely that Defendants will be able to show a breach of contract with regard to their subrogation rights without Thistle's testimony. Thus, as a necessary witness, Rule 3.7 will require Thistle to be disqualified from this matter.[8] *See Fassett v. Liberty Mutual Insurance Company,* 1987 WL 45067 (Sept. 30, 1987) (concluding that, in action alleging failure to settle a personal injury claim between plaintiff and a third party, because plaintiff's attorney had first-hand knowledge of what occurred during relevant settlement negotiations, he "ought" to be a witness in the case and, thus, must be disqualified).

Finally, Plaintiffs argue that disqualifying Mr. Thistle as their attorney would separate them from their counsel of choice.[9] (N.T. 10/28/96 at 19). While this Court recognizes the importance of the Brennans' right to counsel of their choice, "[t]hese considerations must yield, however, to considerations of ethics which run to the very integrity of our judicial process." *Hull v. Celanese Corp.,* 513 F.2d 568, 572 (2d Cir.1975). In this case, the conflicts of interest are simply too severe to allow Thistle to remain on the case. *See Akerly v. Red Barn Sys., Inc.,* 551 F.2d 539, 544 (3d Cir.1977) (holding that the court must avoid "the appearance as well as the actuality of professional impropriety.").

Based on the above, Mr. Thistle, his associates and law firm are disqualified from representing Plaintiffs in this action.[10] This matter will be placed in suspense for thirty (30) days to allow the Brennans the opportunity to obtain new counsel. Within twenty (20) days after new counsel enters an appearance, he or she should file a statement informing this Court and opposing counsel whether new counsel wishes to withdraw or amend any of the pleadings previously filed by or on behalf of the Brennans in this action. Subsequently, a status conference will be scheduled.

An appropriate Order follows.

### ORDER

AND NOW, this 11th day of December, 1996, upon consideration of Defendants' Motion to Disqualify Daniel L. Thistle, Esquire, as counsel for Plaintiffs in the above-captioned matter, and all responses thereto, it is hereby ORDERED that said motion is granted, and Plaintiffs' counsel, his associates and law firm are disqualified from participating in the representation of the Plaintiffs with regard to this matter. It is further ORDERED that this case will be placed in suspense for thirty (30) days to allow Plaintiffs the opportunity to obtain new counsel. Within twenty (20) days after new counsel enters an appearance, he or she should file a statement informing this Court and opposing counsel whether new counsel wishes to withdraw or amend any of the pleadings previously filed by or on behalf of the Plaintiffs in this action. Subsequently, a status conference will be scheduled.

---

Bernadette Brennan for any/all expenses paid or payable by Blue Cross/Blue Shield." (Defendants' Ex. K).

**8.** No discussion of the exceptions to Rule 3.7 is required since the parties do not maintain that an exception applies.

**9.** "The United States District Court of the Eastern District of Pennsylvania has recognized that a party's 'choice of counsel is entitled to substan-

tial deference.'" *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.,* 808 F.Supp. 1200, 1203 (E.D.Pa.1992).

**10.** As set forth in Rule 1.10(a) of the Pennsylvania Rules of Professional Conduct, because Thistle cannot serve as counsel for the Brennans in this case, disqualification will be imputed to all lawyers in his law firm.