**MONUMENT BUILDERS OF PENNSYLVANIA, INC.**

v.

**THE CATHOLIC CEMETERIES ASS'N, INC., et al.**

**No. Civ.A. 99–2030.**

United States District Court,
E.D. Pennsylvania.

Dec. 9, 1999.

Mitchell A. Kramer & Associates, Rydal, PA, for plaintiff.

Richard A. Kraemer, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, Clayton A. Sweeney, Jr., Judith F. Olson, Sweeney Metz Fox McGrann & Schermer, Pittsburgh, PA, for defendants.

## MEMORANDUM

DALZELL, District Judge.

Before us is the question of whether a lawyer who was a law clerk of a judge may, after she has left the judge's employ, later work on a new case that arises out of an old case that was before the judge while the lawyer was his law clerk. As we have found little decisional authority on this question, we offer some extended analysis of it.

*Background*

In 1984, plaintiff Monument Builders of Pennsylvania ("MBPA"), an association of independent cemetery monument builders and dealers, commenced in this District an antitrust class action against various Pennsylva-

nia cemeteries and cemetery associations, *see Monument Builders of Pa. v. American Cemetery Ass'n*, Civ. A. No. 84–3014 (the "1984 action"). The 1984 action was assigned to Judge E. Mac Troutman, for whom Anne L. Carroll, Esq., an attorney for plaintiff in this action, served as a deputy clerk from August, 1983 until August, 1984 and as a law clerk from August, 1984 until Judge Troutman's retirement on August 31, 1998.[1]

After years of negotiations, MBPA reached a settlement agreement (the "master agreement") with the Pennsylvania Cemetery Association ("CAP"). Judge Troutman later entered the agreement as an Order of Court that was binding on all CAP members who did not opt out of the settlement. In addition to the master agreement, MBPA also entered into a separate settlement agreement in July of 1989 ("the 1989 agreement") with certain individual cemeteries and three Catholic cemetery groups, including the Catholic Cemeteries Association of the Diocese of Pittsburgh, a defendant in the instant action. The 1989 agreement was also entered as an Order of Court.

Both the master agreement and the 1989 agreement contain provisions granting the Court continuing jurisdiction to enforce both contracts. This new, 1999 action, which alleges breach of the two settlement agreements as well as Sherman and Clayton Act antitrust violations, was brought pursuant to that continuing jurisdiction covenant.

At a Rule 16 scheduling conference on September 30, 1999, plaintiff disclosed to us and defendants that Carroll had served as a law clerk to Judge Troutman and performed "substantial work on the related case". Thereafter, we directed Carroll to report to us on the extent of her involvement in the 1984 action. After receiving her report, we directed plaintiff to show cause why Carroll should not be excluded from this matter. Defendants have responded to plaintiff's show-cause memoranda and also have filed a motion to disqualify Carroll and her law firm,

---

1. The 1984 action was reassigned to us after Judge Troutman's retirement and remains on our docket.

Carroll began working part-time for Mitchell A. Kramer, Esq. on September 7, 1998, one week after leaving Government service. *See* Carroll Aff. ¶ 6.

Mitchell A. Kramer & Associates, from this matter.

*Analysis*

▮ Regarding lawyers generally, our power to disqualify an attorney "derives from our inherent authority to supervise the professional conduct of attorneys appearing before" us, *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980); *see also, e.g., James v. Teleflex, Inc.*, 1999 WL 98559, at *3 (E.D.Pa. Feb. 24, 1999) ("To further the courts' interests in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interest, and protecting confidential communications between attorneys and their clients, a court has the power to disqualify counsel from representing a particular client"). We should disqualify a lawyer only if we determine "that disqualification is an appropriate means of enforcing [an] applicable disciplinary rule," *Brennan v. Independence Blue Cross*, 949 F.Supp. 305, 307 (E.D.Pa.1996) (internal quotation omitted); *see also id.* (holding that we should "consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions").

Carroll's representation of MBPA is thus unquestionably governed by the Rules of Professional Conduct that apply to all members of the Bar. As a former law clerk in this District, however, Carroll is also subject to Canon 2 of both the Code of Conduct for Law Clerks and the Code of Conduct for Judicial Employees, as well as the principles contained in the *Chambers Handbook for Judges' Law Clerks and Secretaries*. We

hold that violations of these standards outweigh any right of MBPA to retain co-counsel of its choosing and any right of Carroll to practice without excessive restrictions, and thus we will disqualify her from this matter.

▮ We first address Carroll's conduct under the Rules of Professional Conduct.

Pursuant to Local R.Civ.P. 83.6.IV.B, we apply the Pennsylvania Rules of Professional Conduct to acts or omissions by attorneys before this Court. Under Pennsylvania Rule of Professional Conduct 1.12, "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a . . . law clerk [to a judge], unless all parties to the proceeding consent after disclosure".

In an addendum to its Rule 16 Conference Information Sheet, plaintiff admits that Carroll's work for Judge Troutman included "substantial work on [the 1984 action]". In her October 8, 1999 letter to the Court, Carroll also admits that she was substantially involved in the decision to award counsel fees in the 1984 action,[2] participated in hearings and decisions regarding the default of one of the defendants, and had "substantial involvement" in researching and preparing a memorandum opinion on alleged violations of the consent decree.[3]

Thus, if we treat this new, 1999 action and the 1984 action as the same "matter," it is clear under Rule 1.12 that Carroll must be precluded from participating in this case. There is little doubt that the two actions should be treated as the same "matter": they involve the same parties and largely the same facts and conduct and, more importantly, this new action seeks to recover for the violation of a consent decree that Carroll had

---

**2.** Carroll writes that:

After the consent decree had been drafted by counsel and presented to Judge Troutman for review and approval, it was necessary to make an award of counsel fees in lieu of damages, which involved a thorough review of plaintiff's counsel's fee petition in light of the challenges raised by defendant's counsel. I was substantially involved in that review and prepared memoranda and notes for Judge Troutman to assist him in making an appropriate award.

**3.** The activity in the 1984 case took place during the whole of Carroll's clerkship. From its filing

on June 20, 1984, the case was hotly litigated, and by the end of her employment with Judge Troutman, there were no less than 307 docket entries in the matter. Among the published opinions, see, for example, *Monument Builders of Pa., Inc. v. American Cemetery Ass'n*, 1996 WL 478636 (E.D.Pa. Aug. 19, 1996); *Monument Builders of Pa., Inc. v. American Cemetery Ass'n*, 1994 WL 143114 (E.D.Pa. Apr. 18, 1994); *Monument Builders of Pa., Inc. v. American Cemetery Ass'n*, 1989 WL 43622 (E.D.Pa. Mar. 24, 1989).

a hand in construing while she served as Judge Troutman's law clerk.[4]

Our duty to protect the integrity of the bar outweighs MBPA's interest in representation by co-counsel of its choosing[5] and Carroll's interest in practicing freely. That duty here requires us to disqualify Carroll from this litigation under Rule of Professional Conduct 1.12(a).

██ We also find that Carroll should be disqualified under Canon 2 of the Code of Conduct for Law Clerks (1994 ed.), which provides that "a law clerk should avoid impropriety and the appearance of impropriety in all activities". *See also* Code of Conduct for Judicial Employees Canon 2 (1996 ed.) (same).[6] These Codes' Canon 2 are broader than Rule 1.12 because they go well beyond the "participated personally and substantially" language of the Rule of Professional Conduct.

As far as we can tell, no court has before had occasion to construe either Code of Conduct. Thus, no federal court to our knowledge has made the threshold determination that these Codes are authoritative and govern a law clerk's practice after the clerkship ends.

Lest the Codes merely constitute high-sounding words on paper, we hold that they are legally authoritative and binding on law clerks even after they leave judges' employment.[7] At a minimum, these Codes are the contractual *quid* for the *quo* of employment in the federal Judicial Branch. Application of the Codes' terms merely enforces this contract for services.

4. In fact, in its response to defendants' motion to dismiss or transfer for improper venue, MBPA raised the argument that the case should remain in this District because of its very close relationship to the 1984 action.

5. We note that MBPA will not have to scramble to find replacement counsel, as we are leaving this case in the very capable hands of Mitchell A. Kramer, Esq., who has represented MBPA for more than twenty years.

6. The Judicial Conference adopted this Code of Conduct on September 19, 1995, effective January 1, 1996. By its terms it "applies to all employees of the Judicial Branch except Justices [and] Judges", who are subject to a separate Code. *See id.* at first unnumbered page.

██ Having found that the Codes apply after Carroll's clerkship ended, we find that her shift from law clerk to advocate, on what we have already found to be the same "matter", implicates at least the appearance of impropriety. Because Carroll seeks here to recover for her client for the alleged violation of a consent decree that, working as an arm of the Court, she had a hand in construing, her representation of MBPA in this matter would, to reasonable eyes, appear improper. It therefore violates Canons 2.

It is also worth noting that page 22 of the *Chambers Handbook for Judges' Law Clerks and Secretaries* (1994 ed.), concerning "practice after termination of a clerkship," provides that "former law clerks must not participate in a case in which they performed work of any kind while law clerks". Like the two Canons 2, this proscription stems from the extraordinarily close relationship that exists between judge and law clerk. Because of that relationship's very uniqueness and value, the Court has an institutional duty to the public—independent of any litigant's interest or consent—to assure that there is never even a hint that it is being exploited to advance a private party's interest in a lawsuit.[8]

Again, while this action and the 1984 action technically may be different "cases," in that they have different civil action numbers, they are closely enough related so that Carroll's participation in this new action would violate the *Chambers Handbook* as well as the Codes of Conduct's rules on post-clerkship practice.

The Judicial Conference adopted the Code of Conduct for Law Clerks in March of 1981, and it has been amended several times since then. The current Code is printed in a Federal Judicial Center publication, *Chambers Handbook for Judges' Law Clerks and Secretaries*, at 171–77 (1994 ed.).

7. They also put civil flesh on the judicial bones of 18 U.S.C. § 1905.

8. We stress here that we are only dealing with these institutional interests and not any actual improper action on Ms. Carroll's part. She has conducted herself in this matter professionally, and we are grateful to her for her candor at the Rule 16 conference.

■ We find, however, that, under Rule of Professional Conduct 1.12, there is no need to disqualify the entire firm of Mitchell A. Kramer & Associates, as that firm easily can comply with subsection (c) of the Rule, which provides:

> If a lawyer is disqualified [because of prior work on· a matter as a law clerk], no lawyer in a firm with which the lawyer is associated may knowingly undertake or continue representation in the matter unless:
>
> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.

Because Carroll primarily works from home, and because MBPA states in its brief that "a screen could readily be established to prevent [Carroll's] access to any files or information concerning the case," Pl.'s Br. in Opp. To Mot. to Disqualify at 3–4, there is no need to disqualify the Mitchell A. Kramer law firm. This is particularly so because MBPA states unequivocally in its brief that Carroll obtained no confidential information while a law clerk on the new matter before us, and therefore could not have shared any confidential information about this matter with her firm.

We also find that MBPA's notice to the Court was sufficiently "prompt" to satisfy Rule 1.12(c)(2). As noted, Carroll notified us of the potential conflict at the first Rule 16 conference in this matter. We therefore will not disqualify the entire Mitchell A. Kramer law firm.

### ORDER

AND NOW, this 9th day of December, 1999, upon consideration of plaintiff's "memorandum of law regarding show cause," defendants' response thereto, plaintiff's reply memorandum, and defendant's sur-reply, and defendant's motion to disqualify plaintiff's counsel (docket entry # 16) and plaintiff's response thereto, and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motion is GRANTED; and

2. Anne L. Carroll, Esq. is DISQUALIFIED as plaintiff's counsel in this matter.